BETTY HARLESS v. JOYCE ANN CHURCH FLYNN (AMENDED SUBSEQUENT TO THE MARRIAGE OF THE DEFENDANT TO READ JOYCE ANN KIMBERLIN).

(Filed 10 July 1968.)

**1. Master and Servant § 86—**

An employee who sustains an injury arising out of and in the course of employment, caused by the negligence of a fellow employee who was act-

HARLESS v. FLYNN.

ing within the course of employment, G.S. 97-2(6), may not maintain an action at common law against the negligent employee.

**2. Master and Servant § 53—**

In order to be compensable under the Workmen's Compensation Act, an injury must arise out of and in the course of employment.

**3. Same—**

The phrase "arising out of" has reference to the origin or cause of the accident, and where any reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as arising out of employment.

**4. Same—**

An accident has a reasonable relationship to the employment when it is the result of a risk or hazard incident to the employment.

**5. Same—**

For an accident to arise out of the employment there must be some causal connection between the injury and the employment, and when an injury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment or from a hazard common to others, it does not arise out of the employment.

**6. Same—**

The words "in the course of" have reference to the time, place and circumstances under which the accident occurred, and an injury occurs in the course of employment where there is evidence that it occurred during the hours of, and at the place of, employment while the claimant was actually in the performance of the duties of the employment.

**7. Same—**

With respect to time, the course of employment begins a reasonable time before actual work begins, continues for a reasonable time after work ends, and includes intervals during the work day for rest and refreshment.

**8. Same—**

With respect to place the course of employment includes the premises of the employer.

**9. Same—**

With respect to circumstances, injuries within the course of employment include those sustained where the employee is engaged in activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business.

**10. Master and Servant § 58—**

In tending to his personal physical needs, an employee is indirectly benefiting his employer.

**11. Master and Servant § 54—**

The risk of injury in automobile mishaps is one that is obviously common to the public at large, yet, where large numbers of employees drive

automobiles to their place of employment and provision is made for parking on the employer's premises, it is clear that the employment itself has created conditions in which the risk of automobile-connected injury is different in kind and possibly greater in degree than that confronted by the public at large.

**12. Master and Servant §§ 57, 86— Employee's injury on parking lot of employer during lunch hour is compensable under Compensation Act.**

Evidence that during the lunch hour employees were free to go anywhere they pleased, that plaintiff and defendant, who were fellow employees, prepared to leave their employer's parking lot to eat lunch somewhere off the employer's premises, that the vehicle in which plaintiff was a passenger was struck by the vehicle operated by defendant while both were still upon the parking lot, and that the plaintiff was injured, *is held* sufficient to support findings (1) that the plaintiff was injured by accident arising out of and in the course of her employment within the meaning of G.S. 97-2(6) and (2) that the plaintiff is barred from maintaining a common law action against the defendant.

APPEAL by defendant from *Martin, Robert M., J.,* 8 January 1968 Session, DAVIDSON Superior Court.

On 25 January 1967 plaintiff and defendant were employees at the Henry T. Link Corporation plant in Lexington, Davidson County, North Carolina. Link Corporation maintained upon its premises a parking lot where its employees and guests parked their automobiles. On 25 January 1967 plaintiff and defendant were preparing to leave their employer's parking lot to go to eat lunch at some place off the employer's premises. The vehicle in which plaintiff was a passenger was struck by the vehicle operated by defendant, while both were still upon the employer's premises. Plaintiff was injured and brings this common law action against the defendant for damages, alleging negligence in the operation of defendant's vehicle.

By her further answers, the defendant alleges that the plaintiff· is barred from proceeding in this action because the accident arose out of and in the course of her employment and is covered under the Workmen's Compensation Act. The plea in bar was heard by Olive, J., at the 17 July 1967 Session, Davidson Superior Court, upon stipulated facts as follows:

"(a)   The plaintiff and the defendant were on the 25th day of January, 1967, both employed at the furniture manufacturing plant of the Henry T. Link Corporation near Lexington, and on said date, both the plaintiff and the defendant began their work in the manufacturing plant of the Henry T. Link Corporation at the regular time to begin the working day, which was 7:30 A.M.

"(b)   The Henry T. Link Corporation premises consist *(sic)* of a tract of land located a short distance south of the City of Lexington, and on this tract of land was located a building approximately 1,000 feet in length and located on the east side of this building and about 40 feet from the building at a lower level was a cleared and improved but unpaved strip of land approximately 60 feet wide which extended the entire length of the building. This strip was maintained by the Henry T. Link Corporation for the use of its employees and guests as a parking area for automobiles which were normally and customarily parked perpendicular to each side of the strip in two single rows with the vacant area in the middle of the strip being left and used for driving into and out of the parking area. Two or more flights of steps led down from the manufacturing plant to the parking area, and a gate was located on the southern end of the parking area leading to the road which provided access to the manufacturing plant of the Henry T. Link Corporation. This road was a public road maintained by the State Highway Commission. The plaintiff customarily rode to her place of work with Cliff Dameron who parked his car in the area described above, and the defendant customarily drove her car to work and parked it in this area also.

"(c)   The duties of both the plaintiff and the defendant required them to work within the building of the Henry T. Link Corporation during the work period, and they remained at their job positions within the building until about 12:00 Noon on the 25th day of January, 1967.

"(d)   The regular work schedule followed by both the plaintiff and the defendant was from 7:30 A.M. to 12:00 Noon, and at 12:00 Noon they were allowed a one-hour lunch period, after which they were required to return and work until 4:30 P.M. On the 25th day of January, 1967, both the plaintiff and the defendant were at their normal job positions when the lunch whistle blew, signifying the beginning of the lunch period. During this time, they were free to eat lunch on the premises or leave the premises and go away for the purpose of obtaining lunch. Some of the employees customarily ate on the premises, while others went to places away from the premises, and some of those who left the premises went in private passenger cars.

"(e)   At about 12:00 Noon the 25th day of January, 1967, when the noon lunch whistle sounded, the plaintiff and the defendant each left their respective places of work within the

plant, and the plaintiff, without any appreciable delay, entered the automobile of Cliff Dameron while it was within the aforesaid strip of land extending along the side of the building for the purpose of going to eat lunch.

"(f)    At 12:00 Noon, upon the sounding of the lunch whistle, the defendant went directly from her place of work within the plant to the place where her car was parked beside the plant in the aforesaid strip of land upon the premises of the Henry T. Link Corporation in order to leave the premises and go eat lunch at some place away from the premises.

"(g)    Without any appreciable delay, the car in which the plaintiff was riding proceeded in a southern direction along the center of the aforesaid strip of land toward the gate which was located on the southern end of the strip of land, and the defendant also proceeded in her car along the strip of land toward the gate behind the car in which the plaintiff was riding.

"(h)    When the plaintiff's car had proceeded about 200 feet and was still approximately 300 feet north of the gate leading to the strip of land and was traveling toward said gate, and defendant's car was also traveling in a southern direction toward said gate, a collision occurred between the two vehicles, and at this time both vehicles were still located on the aforesaid strip of land of the Henry T. Link Corporation and were in the process of proceeding toward the gate and were approximately 300 feet away from the gate.

"(i)    The Henry T. Link Corporation is a corporation employing five or more employees and the plaintiff, the defendant, and the Henry T. Link Corporation were on the 25th day of January, 1967, subject to and bound by the provisions of the North Carolina Workmen's Compensation Act, which is Chapter 97 of the General Statutes of North Carolina, insofar as said Act was applicable, and the Henry T. Link Corporation had secured the payment of compensation to its employees as provided by said Workmen's Compensation Act."

Judge Olive entered an order on 22 July 1967 overruling defendant's plea in bar. The defendant excepted to the entry of this order.

The case came on for further hearing before Judge Martin at the 8 January 1968 Session upon stipulations as set out in Judge Martin's judgment. Upon the stipulations Judge Martin entered judgment as follows:

"This cause coming on to be heard before The Honorable

Robert M. Martin, Judge Presiding at the January 8, 1968, Civil Session of the Superior Court of Davidson County; and it appearing to the Court that the defendant has filed an Answer in this action containing a plea in bar, and that the plea in bar was heard before the Honorable Hubert E. Olive, Judge Presiding at the July 17, 1967, Civil Session of the Superior Court of Davidson County upon an agreed statement of facts pursuant to a stipulation of the parties and that a judgment was entered overruling the plea in bar; that the defendant duly excepted to the entry of said judgment; and that this cause has come on for trial upon the issues of negligence and damages. The parties have agreed to waive a trial by jury as to these issues, and have stipulated that the Court might determine said issues without the intervention of a jury; and it further appearing that the parties have, subject to the limitations and reservations hereinafter contained, agreed that the issues which arise on the pleadings other than the defendant's plea in bar might be answered as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the Complaint?
"ANSWER:   Yes.

"2. In what amount, if any, has the plaintiff been damaged as a result of the injuries she sustained?
"ANSWER:   $2,750.00.

"It has been expressly agreed between the parties, and it is ordered by the Court that the consent of the defendant to the answers to the above issues shall not constitute a waiver of her right to appeal from the judgment of the Court previously entered upon the plea in bar asserted in the answer of the defendant filed in this cause and that the answers to said issues shall have the same effect as if this action had been tried before a jury in an adversary proceeding in which the defendant had denied that she was negligent and had denied that the plaintiff was entitled to recover any amount in damages and had offered evidence in support of her contentions and the jury had answered the issues as hereinabove set forth.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff have and recover judgment against the defendant in the amount of $2,750.00 and that the costs of this action shall be paid by the defendant."

The defendant appealed, assigning as error the entry of Judge Olive's order overruling defendant's plea in bar.

HARLESS *v.* FLYNN.

*Robert L. Grubb for plaintiff appellee.*
*Walser, Brinkley, Walser and McGirt by Walter F. Brinkley for defendant appellant.*

BROCK, J. The basic question for determination by this Court has been succinctly pointed up by the Record on Appeal and the briefs as follows:

> Does G.S., Chap. 97 (The North Carolina Workmen's Compensation Act) bar a common law action by an employee against a fellow employee for damages negligently inflicted in an automobile accident in the parking lot maintained by their employer for use by the employees, when both employees were in process of leaving the employer's parking lot during the lunch hour, with the acquiescence of the employer, to eat lunch at some place away from the employer's premises?

The answer to this question will be YES if the plaintiff's alleged injuries were injuries by accident *arising out of* and *in the course of* her employment within the meaning of G.S. 97-2(6). This is so because an employee who sustains an "injury arising out of and in the course of . . . employment," caused by the negligence of a fellow employee who was acting within "the course of employment," as that term is used in G.S. 97-2(6), may not maintain an action at common law against the negligent employee. *Altman v. Sanders,* 267 N.C. 158, 148 S.E. 2d 21. Here, according to the stipulated facts, the time, place and circumstances of the collision placed the plaintiff and defendant in identical positions with respect to their employment. Thus, if the plaintiff was within the course of her employment at the time of the collision, the defendant was also.

It seems clear that any injuries sustained by the plaintiff in the collision were injuries "by accident." The remaining inquiry is whether the accident was one *arising out of* and *in the course of* her employment.

In numerous decisions, the Supreme Court of North Carolina has had occasion to consider the application of these words to particular fact situations. It has made clear that the phrase encompasses two separate and distinct concepts — "out of" and "in the course of" — both of which must be satisfied in order for particular injuries to be compensable under the Act. *Poteete v. Pyrophyllite,* 240 N.C. 561, 82 S.E. 2d 693; *Conrad v. Foundry Company,* 198 N.C. 723, 153 S.E. 266.

From the briefs, it is apparent the parties were of the opinion that the present controversy could best be determined by reference

to North Carolina cases involving accidents occurring in "mealtime" and "coming and going" situations. Clearly, those cases are pertinent here, but only because they apply general principles found in other situations. There is nothing special about the "mealtime" and "coming and going" cases, and they can best be understood by applying to them the general principles of other cases.

The phrase *arising out of* has reference to the origin or cause of the accident. *Clark v. Burton Lines*, 272 N.C. 433, 158 S.E. 2d 569. But this is not to say that the accident must have been caused by the employment. "Taking the words themselves, one is first struck by the fact that in the 'arising' phrase the function of employment is *passive* while in the 'caused by' phrase it is *active*. When one speaks of an event 'arising out of employment,' the initiative, the moving force, is something other than the employment; the employment is thought of more as a *condition* out of which the event arises than as the force producing the event in affirmative fashion." 1 *Larson*, Workmen's Compensation Law, § 6.50, p. 45. The North Carolina Supreme Court has similarly stated the connection between the employment and the accident: "Where any *reasonable relationship* to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.'" *Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E. 2d 476, 479. (Emphasis added.)

An accident has a reasonable relationship to the employment when it is the result of a risk or hazard incident to the employment. An injury arises out of the employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a natural result of one of the risks of the employment; the injury must spring from the employment or have its origin therein. *Bolling v. Belk-White Co.*, 228 N.C. 749, 46 S.E. 2d 838; *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865. For an accident to arise out of the employment there must be some causal connection between the injury and the employment. When an injury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it does not arise out of the employment. *Cole v. Guilford County*, 259 N.C. 724, 131 S.E. 2d 308.

The words *in the course of* have reference to the "time, place and circumstances" under which the accident occurred. *Clark v. Burton Lines, supra*. Clearly, a conclusion that the injury occurred in the course of employment is required where there is evidence that it occurred during the hours of employment and at the place of em-

ployment while the claimant was actually in the performance of the duties of the employment. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668; *Alford v. Chevrolet Co.,* 246 N.C. 214, 97 S.E. 2d 869.

With respect to *time,* the course of employment begins a reasonable time before actual work begins, *Altman v. Sanders, supra,* and continues for a reasonable time after work ends, *Maurer v. Salem Co.,* 266 N.C. 381, 146 S.E. 2d 432, and includes intervals during the work day for rest and refreshment. *Rewis v. Insurance Co.,* 226 N.C. 325, 38 S.E. 2d 97; *Pickard v. Plaid Mills,* 213 N.C. 28, 195 S.E. 28.

With respect to *place,* the course of employment includes the premises of the employer. "Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer." *Bass v. Mecklenburg County,* 258 N.C. 226, 233, 128 S.E. 2d 570, 575; quoting with approval from *Bountiful Brick Co. v. Giles,* 276 U.S. 154, 158, 72 L. Ed. 507, 509. "It is usually held that an injury on a parking lot owned or maintained by the employer for his employees is an injury on the employer's premises." *Davis v. Manufacturing Co.,* 249 N.C. 543, 545, 107 S.E. 2d 102, 103; quoted and applied in *Maurer v. Salem Co., supra.*

With respect to *circumstances,* injuries within the course of employment include those sustained while "the employee is doing what a man so employed may reasonably do within a time which he is employed and at a place where he may reasonably be during that time to do that thing." *Conrad v. Foundry Company, supra,* at 727, 153 S.E. at 269; quoted with approval in *Clark v. Burton Lines, supra.* Thus, where the employee is engaged in activity which he is authorized to undertake and which is calculated to further, *directly or indirectly* the employer's business, the circumstances are such as to be within the course of employment. *Perry v. Bakeries Co.,* 262 N.C. 272, 136 S.E. 2d 643. Therefore, the fact that the employee is not engaged in the actual performance of the duties of his job does not preclude an accident from being one within the course of employment. *Brown v. Aluminum Co.,* 224 N.C. 766, 32 S.E. 2d 320. And an employee may be in the course of his employment when he is on the way to the place of his duties, *Altman v. Sanders, supra,* leaving the place of his duties at the end of the day, *Maurer v. Salem Co., supra,* or leaving upon learning that there was no work for him to do. *Morgan v. Cloth Mills,* 207 N.C. 317, 177 S.E. 165.

In tending to his personal physical needs, an employee is indi-

rectly benefiting his employer. Therefore, the course .of employment continues when the employee goes to the washroom, *Rewis v. Insurance Co., supra,* takes a smoke break, *Fox v. Mills, Inc.,* 225 N.C. 580, 35 S.E. 2d 869, takes a break to partake of refreshment, *Pickard v. Plaid Mills, supra,* goes on a personal errand involving temporary absence from his post of duty, *Bellamy v. Manufacturing Co.,* 200 N.C. 676, 158 S.E. 246, voluntarily leaves his post to assist another employee, *Riddick v. Cedar Works,* 227 N.C. 647, 43 S.E. 2d 850.

Thus, it is the conjunction of all three of these factors — time, place and circumstances — that brings a particular accident within the concept of *course of* employment. If, in addition to this, the accident arose *out of* employment, then any injury resulting therefrom is compensable under the Act.

The "mealtime" and "coming and going" cases, traditionally classified as two particular types of situations, should be treated as any other case by applying the foregoing general principles.

The two "mealtime" cases discussed by the parties in their briefs are *Horn v. Furniture Co.,* 245 N.C. 173, 95 S.E. 2d 521; and *Matthews v. Carolina Standard Corp.,* 232 N.C. 229, 60 S.E. 2d 93. In *Horn,* the claimant was injured during his lunch break when hit by an automobile as he was crossing from the plant site to the company parking lot on the other side of a state highway. The Court denied compensation on the ground that the injury did not arise out of and in the course of employment, relying on these facts: (1) The accident occurred off the premises of the employer; (2) The claimant was engaged in the activity of crossing a state highway to eat his lunch; and (3) The risk of the hazards of the highway were those common to the general public. In *Matthews,* compensation was denied upon the ground that the injury and death of the plaintiff's decedent did not arise out of his employment. The injuries occurred when, following the sounding of the lunch whistle, the decedent attempted to jump onto the back of a truck moving across the employer's premises. Noting that the decedent had no apparent reason for getting onto the truck, the Court held that the injury did not arise out of the employment since it "did not result from a hazard incident to his employment." *Id.* at 234, 60 S.E. 2d at 96. Far from precluding recovery for mealtime injuries, the *Matthews* case makes it clear that such recovery may be had, for the Court therein conceded that the decedent was in the course of his employment. In *Moore v. Stone Co.,* 242 N.C. 647, 89 S.E. 2d 253, a case not discussed by the parties in their briefs, the Supreme Court, in a *per curiam* decision, affirmed a denial of compensation upon the ground

that the injury did not arise out of the employment. The claimant was injured while on his lunch break when he, "out of curiosity or for reasons unknown, wired the blasting machine . . . and in his attempt to set off a single dynamite cap ignorantly and accidentally detonated the 300 dynamite caps beside the doghouse resulting in a terrific explosion and in the injuries which he sustained." *Id.* at 648, 89 S.E. 2d at 254.

It seems, therefore, that these three cases involving injuries during the lunch period are not properly labeled "mealtime" cases, for the element of time is merely incidental, not decisive. In *Horn,* place, activity and the nature of the risk out of which the injury arose were the crucial factors. In *Matthews* and *Moore,* the nature of the risk and the activity in which the employee was engaged were determinative. Nothing in any of these cases suggests that mealtime, as a time, or the activity of eating lunch or preparing to eat lunch, as a circumstance, are not within the course of employment. To the contrary, the *Matthews* case makes it clear that mealtime is within the course of employment, even where such time is completely free for the employees: "The work hours were 8 to 4:45, except that from 12 noon to 12:45 work was stopped for lunch. During this time employees were not paid, and were free to eat their lunch there or go anywhere they wished. Most of them ate their lunch on the premises, some went home for lunch and some went to a store a quarter of a mile away." *Id.* at 231, 60 S.E. 2d at 94. In light of these facts, the Court conceded that the course of employment requisite was satisfied. Nothing in *Horn* or *Moore* suggests a contrary view.

The basic rule disallowing recovery for injuries sustained in going to and coming from work is well established by many decisions in this jurisdiction. See cases collected in 5 Strong, N. C. Index 2d, Master and Servant § 62. There are certain clearly settled exceptions to the rule, however, including one for injuries sustained *on the premises* of the employer. See *Altman v. Sanders, supra; Maurer v. Salem Co., supra; Davis v. Manufacturing Co., supra.* These cases make it clear that the disallowance of recovery in the usual coming and going case is based, not upon the ground that the circumstances (*i.e.,* the employee's going to or leaving work) are not within the course of employment, but upon considerations of time and place. In addition, the question of *arising out of* is not satisfied in many of these cases, especially where the injury is due to the hazards of the public highway — risks common to the general public. Thus, recovery was denied where the injury was sustained in a highway accident, away from the premises, some five hours after the employee left work. *Alford v. Chevrolet Co., supra.*

These cases clearly show that while recovery may be denied where an injury is sustained while the employee is going to or coming from work, such denial is *not* upon the ground that going and coming are circumstances not within the course of employment. To the contrary, the cases clearly show that such activity is within the course of employment if the time and place requisites are satisfied, and that injuries sustained while engaged therein are compensable if the injury arose out of employment: *i.e.*, that they were due to an employment-connected risk. *Altman v. Sanders, supra; Maurer v. Salem Co., supra; Bass v. Mecklenburg County, supra; Davis v. Manufacturing Co., supra; Morgan v. Cloth Mills, supra; Gordon v. Chair Co.,* 205 N.C. 739, 172 S.E. 485.

The plaintiff here was injured in a collision between two automobiles operated by fellow employees in the company parking lot. Is the hazard, or risk, of injury under such circumstances one that is peculiar to the employment? The risk of injury in automobile mishaps is one that is obviously common to the public at large. *Horn v. Furniture Co., supra.* Yet, where large numbers of employees drive automobiles to their places of employment and provision is made for parking on the employer's premises, it is clear that the employment itself has created conditions in which the risk of automobile-connected injuries is different in kind and possibly greater in degree than that confronted by the public at large. The risk may be increased by a large number of automobiles, concentrated in a confined space, coming into and going out of the lot at approximately the same times, operated by employees who may be preoccupied with thoughts of work to be begun, or exhausted from work completed and anxious to get to their respective homes or other places of relaxation and refreshment. Thus, the Supreme Court has held that injuries sustained in automobile mishaps in company parking lots arise out of employment. *Altman v. Sanders, supra; Maurer v. Salem Co., supra.* This would seem to be the kind of hazard from which the Workmen's Compensation Act was designed to protect employees. "The philosophy which supports the Workmen's Compensation Act is that the wear and tear of human beings in modern industry should be charged to the industry, just as the wear and tear of machinery has always been charged." *Vause v. Equipment Co.,* 233 N.C. 88, 92, 63 S.E. 2d 173, 176. It clearly appears that plaintiff was injured by accident *arising out of* her employment.

If, as alleged in the plaintiff's complaint, her injury was due to the negligence of the defendant, the above conclusion is bolstered by that fact. "An injury suffered by an employee while engaged in his master's business within the scope of his employment proximately

resulting from the negligence of fellow employees is, as to the employee, an 'accident' arising out of and in the course of his employment." *Tscheiller v. Weaving Co.*, 214 N.C. 449, 199 S.E. 623.

The plaintiff was injured in the company parking lot, shortly after the whistle signaled the beginning of a one-hour lunch period during which employees were free to go anywhere they pleased. She was a passenger in an automobile which was being driven toward the parking lot exit for the purpose of taking its occupants off the premises for lunch. The plaintiff was, therefore, injured in the course of her employment with respect to *time, place* and *circumstances. Matthews v. Carolina Standard Corp., supra.* Therefore, the plaintiff's injuries arose *in the course of* her employment within the meaning of G.S. 97-2(6).

The view that on-premises mealtime injuries may be within the coverage of Workmen's Compensation provisions, depending upon the circumstances of the injury, finds support among legal writers and in the decisions of other jurisdictions. See 1 *Larson,* Workmen's Compensation Law § 1550-1554 (1966); 7 *Schneider,* Workmen's Compensation Text § 1632-1635 (3d ed. 1950); 58 Am. Jur., Workmen's Compensation § 228 (1962); 99 C.J.S., Workmen's Compensation § 240 (1958); annots., Compensation For Injuries During Lunch Hours On Employer's Premises, 6 A L.R. 1151 (1920); Liability Under Workmen's Compensation Acts For Injuries Occurring During Lunch Or Meal Period, 26 N.C.C.A. (NS) 271 (1950), 1 N.C.C.A. (NS) 791 (1937).

We hold therefore that under the allegations of the complaint and the stipulated facts, the plaintiff is barred by G.S. Chap. 97 from proceeding in this common law action against the defendant. It follows that in our opinion Judge Olive erred in overruling defendant's plea in bar, and that the judgment entered by Judge Martin must be vacated. Defendant's plea in bar should have been sustained, and plaintiff's action dismissed.

The judgment awarding damages to the plaintiff in this action, and the verdict upon which the judgment is based, are vacated and set aside; and this action is dismissed.

Reversed and dismissed.

MALLARD, C.J., and PARKER, J., concur.