The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. EBI Companies was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The defendants filed a Form 61 Denial of Workers Compensation claim on 9 February 1998.
5. The plaintiffs average weekly wage was $362.31, which yields a weekly compensation rate of $241.54.
6. The issue for determination is whether the plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer on 19 January 1998, and if so to what benefits may be entitled under the Act.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a thirty-eight year old high school graduate. He had completed two years of college.
2. Plaintiff was hired by the defendant-employer in 1988. Initially, he worked as a trim saw operator. Since 1994, plaintiff has worked as a lumber grader, where he inspects boards as they come down on the chain conveyer. The plaintiff would sit on a stool in close proximity to a passing conveyer and with a control console immediately behind him. From that stool, plaintiff would have to lean forward to grade and mark the boards as they pass by on a conveyer and lean back to access the control console. The Full Commission finds that this aspect of plaintiffs employment subjects him to a peculiar hazard to which the public is not generally exposed.
3. On 19 January 1998, at approximately 4:00 p.m., the plaintiff was grading boards and fell off the stool on which he was sitting. The plaintiff struck his head on the control console and lost consciousness. Plaintiff was found face down on the floor with blood around the corner of his mouth and nose. Plaintiffs left ear was swollen and bruised and plaintiff was later thought to have fractured the temporal bone, which caused a loss of hearing.
4. William D. Harris, the employers Vice President of Administration, investigated this incident. Mr. Harris found no witness to plaintiffs fall. He further found that plaintiff had graded the board in his vicinity and that the conveyer had been cut off, but Mr. Harris was unable `to determine whether it was cut off when plaintiff struck it while falling off of the stool or if someone else turned it off.
5. Following the incident, the plaintiff was taken by ambulance to Albemarle Hospital. Plaintiff underwent testing, and was given Dilantin for possible seizure disorder as a precaution. Plaintiff was found to have bitten his tongue, which can be a sign of seizure. Dr. Brandon Peters admitted plaintiff to the hospital and, on 20 January 1998, he consulted with neurologist Dr. Lloyd Hitchings.
6. Dr. Hitchings, a neurologist, could not offer an opinion regarding a seizure and testified that 50 percent of seizures occur for no apparent reason. Dr. Hitchings also noted that plaintiffs history of seizures at age ten was not relevant since plaintiff had lived 28 years without any seizures. Dr. Hitchings testified that the tongue biting, although indicative of seizure, was not conclusive in that respect. Dr. Hitchings also stated that he found no sign of incontinence, which is another sign of seizure. The plaintiffs blood sugar levels were checked and not found to be a factor in plaintiffs loss of consciousness.
7. Prior to plaintiffs loss of consciousness, he did not feel dizzy, lightheaded, overheated, or hungry. He described the incident as having no warning whatsoever, but being like a light switch — one moment he was working, and the next he was being attended to by the ambulance crew. Dr. Hitching testified that plaintiffs tongue biting, which is often considered a sign of seizure, could have resulted from plaintiff passing out and biting his tongue on impact with the console or the floor. Dr. Hitchings said there was not enough information to conclusively state a cause for plaintiffs loss of consciousness.
8. Dr. John Wood, an otolaryngologist, examined plaintiff on 20 January 1998, due to the left ear contusion. Dr. Wood found plaintiff had decreased hearing in the ear and was very vertiginous. Audiogram testing done before the accident indicated plaintiff had a ten percent hearing loss in the left ear, but that increased to 70 to 80 percent hearing loss after the fall from the stool at work.
9. Dr. Wood treated plaintiffs vertigo, which resolved. However, plaintiff retained a 70 to 80 percent hearing loss in the left ear. Dr. Wood testified that the plaintiff suffered a 60 to 70 percent hearing loss as a result of his on-the-job injury.
10. The plaintiff filed his hospital bills on his private insurance plan.
11. The plaintiff returned to work with the defendant-employer on 6 April 1998, at the same wage.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In the instant case, the plaintiffs injuries were as a result of his accidental fall arising out of and in the course of his employment. N.C. Gen. Stat. 97-2(6). The fall itself is the unusual, unforeseen occurrence which is the accident. Robbins v.Hosiery Mills, 220 N.C. 246, 17 S.E.2d 20 (1941). An accident has a reasonable relationship to the employment when it is the result of a risk or hazard incident to the employment. Harless v. Flynn,1 N.C. App. 448, 162 S.E.2d 47 (1968). Even if there was conclusive evidence of idiopathic condition, the injury still arises out of the employment if the idiopathic condition combines with "risks attributable to the employment to cause the injury.Hollar v. Furniture Company, 48 N.C. App. 489, 269 S.E.2d 667
(1980). It is not necessary that the "risk attributable to the employment be a risk greater than that experienced by the general public. Allred v. Allred-Gardner, Inc., 253 N.C. 554,117 S.E.2d 476, (1960). Additionally, plaintiff is entitled to the Pickrell
presumption. Pickrell v. Motor Convoy, Inc., 322 N.C. 363,368 S.E.2d 582 (1988). Although Pickrell was a death case and the instant case is not, the majority decision in Pickrell quoted approvingly from CJS language that applies the same presumption in non-death injury cases. The language is:
"In the absence of evidence to the contrary, the presumption or inference will be indulged in that injury or death arose out of the employment where the employee is found injured at the place where his duty may have required him to be, or where the employee is found dead under circumstances indicating that death took place within the time and space limits of the employment. . . . Such presumptions are rebuttable and they disappear on the introduction of evidence to the contrary. 100 C.J.S. Workmens Compensation 513 (1958).
2. The plaintiff sustained a 70 percent hearing loss to his left ear and is, therefore, entitled to 49 weeks of compensation at the rate of $241.54 per week. N.C. Gen. Stat. 97-31(18).
3. The plaintiff is entitled to be paid temporary total disability benefits from 20 January 1998 through 6 April 1998 at the compensation rate of $241.54 per week. N.C. Gen. Stat. 97-29.
4. The defendant is obligated to provide to plaintiff such medical treatment as is reasonably required as a result of his injury by accident to effect a cure, give relief or lessen plaintiffs disability. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney fee herein approved, the defendant shall pay the plaintiff 49 weeks of compensation at the rate of $241.54 per week for the loss of hearing. Any amounts which have accrued shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved herein.
2. Subject to an attorney fee herein approved, the defendant shall pay the plaintiff disability benefits from 20 January 1998 through 6 April 1998 at the compensation rate of $241.54 per week. Any amounts which have accrued shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved herein.
3. The defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury of 19 January 1998, as well as such medical treatment as is reasonably required to effect a cure, give relief or lessen plaintiffs disability, in accordance with the procedures of the North Carolina Industrial Commission.
4. A reasonable attorneys fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one and two of this Award is approved for plaintiffs counsel and shall be deducted from the sum due plaintiff and paid directly to plaintiffs counsel.
5. Defendants shall bear the costs of this proceeding.
This 28th day of October 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER