***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the Workers' Compensation Act, the defendant regularly employing three or more persons.
2. At the time of the alleged injury giving rise to this case, the employer-employee relationship existed between the defendant and the deceased-employee.
3. At the time of the alleged injury giving rise to this case, the defendant was a qualified self-insurer, with Hewitt Coleman and Associates, Inc. acting as its third-party administrator.
4. The date of the alleged injury and of the employee's death was October 17, 1998.
5. The deceased employee's average weekly wage as of October 17, 1998 may be determined from an I.C. Form 22 stipulated by the parties.
6. At the time of his death, the deceased employee was married to Nancy Sykes Merrill. There were no other persons wholly or partially dependent on the deceased employee at the time of his death.
7. Nancy Sykes (now Merrill) consents to the jurisdiction of the Industrial Commission and consents to be added as a party plaintiff in this claim.
8. The following documents, filed with the Industrial Commission by the parties, may be received as part of the record for the purpose of establishing the procedural history of this claim:
(a) I.C. Form 18, dated 11/23/98;
(b) I.C. Form 33, dated 2/28/00;
(c) I.C. Form 61, dated 3/8/00; and
(d) I.C. Form 33R, dated 3/23/00.
9. The plaintiff contends, and defendants deny, that the deceased-employee suffered an injury by accident on October 17, 1998, resulting in his death on that date.
10. The parties stipulated into evidence as Stipulated Exhibit #2, a notebook containing, among other things, I.C. forms, medical records, a death certificate and investigative reports.
 ***********
Based upon all of the evidence produced at the hearing, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of his death on October 17, 1998, John Harold Sykes ("Sykes") was 56 years old. He and his wife Nancy Sykes ("Mrs. Merrill") had been married for a number of years. There were no children of the marriage, and no other persons wholly or partially dependent upon Sykes.
2. Prior to October 17, 1998, Sykes had been employed by Salem (defendant) for approximately seventeen years. Sykes was employed as a Service Manager by defendant, and he worked at the company's garage located in Seagrove, North Carolina.
3. defendant was a full-service leasing company, leasing tractor-trailers to customers and has garage facility locations throughout North Carolina and several other states. Defendant provided support and maintenance for these leased vehicles to their contract customers. The only authorized work to be performed at defendant's locations was the support and maintenance provided to these leased vehicles, and to their contractual customers.
4. The Seagrove garage was a fenced-in facility, which contained a maintenance area consisting of several work bays, and a small office area. Since this property was fenced, any and all visitors had to pass through a gate located some distance from the garage.
5. The posted business hours of the Seagrove garage were Monday through Friday 8:00 a.m. until 5:00 p.m., and Saturday 8:00 a.m. until 12:00 p.m. The only work which was usually done on Saturdays was on vehicles returned to the garage late on Friday. This work was normally completed on or before noon.
6. As Service Manager, Sykes was a salaried employee. He managed the operation of the Seagrove garage, and supervised Beuford Stinson and Buck Atkins, the two hourly employees who worked at the Seagrove garage in October 1998.
7. Defendant provided Sykes with a company vehicle, a Ford pick-up truck and a company credit card for use as needed in his work. He was not required to or expected to use any personal vehicles in performing any of his duties for defendant.
8. On Saturday October 17, 1998, Stinson and Atkins arrived at the Seagrove facility at approximately 6:00 a.m. They completed all of the work left from Friday evening, and left the garage by 8:30 a.m.
9. Sykes had not arrived at work when Stinson and Atkins left, but later in the morning of October 17, 1998, he left home and headed for work, driving the company truck. Sometime that morning, Sykes returned to his home, and exchanged the company truck for his personal vehicle. Sykes returned to the Seagrove garage driving his personal vehicle, a Jeep Cherokee. Sykes' company truck remained at his home.
10. At approximately 12:30 p.m., Mrs. Merrill visited the Seagrove garage to see her husband. At that time, Sykes' personal vehicle was parked outside of the garage, and Sykes was in the office.
11. During her visit there were no employees or customers present, and none of the defendant's vehicles were in the garage bay area.
12. When Mrs. Merrill left at approximately 1:00 p.m., Sykes told her that he would be home later after he had worked on his Jeep. No evidence was presented to show that Sykes was engaged in any work activity for defendant during, or at any time after, Mrs. Merrill's visit.
13. At approximately 5:30 p.m., Mrs. Merrill drove to the Seagrove garage after failing to reach Sykes by telephone or by pager. The gates to the Seagrove garage were closed and locked and Sykes' Jeep was no longer in the parking lot. Mrs. Merrill returned home.
14. At approximately 8:30 p.m., Mrs. Merrill still had not heard from Sykes. She then called her daughter and son-in-law, and asked them to meet her at the Seagrove garage. After obtaining the combination for the gate lock, they entered the property and found the garage doors closed and locked. After obtaining entry into the garage, they found the building filled with smoke. They discovered Sykes' body lying on the floor of the mechanics/grease pit directly under where his Jeep Cherokee was parked.
15. At approximately 8:47 p.m., Mrs. Merrill's daughter called the 911 operator and reported the incident as an attempted suicide. She also unsuccessfully attempted CPR.
16. When police officials arrived, Sykes' body was lying in the supine position on the floor of the pit, with no visible sign of injury, except for a small abrasion on the back of the head.
17. The officers found the ignition key of Sykes' personal vehicle in the "on" position, and the motor was not running. The fuel gauge on the vehicle was at, or near, "empty."
18. On October 17, 1998, Ray Keller was defendant's Vice President of Maintenance and had been Sykes' direct supervisor for approximately fifteen years. Tommy Sides was defendant's Vice President and Safety Director, and had been in that capacity for approximately eleven years.
19. Upon receiving word of Sykes' death, Keller and Sides immediately went to the Seagrove garage and arrived while the police were still on the scene. When Keller and Sides entered the garage, none of defendant's vehicles were inside and there was no indication that Sykes had been doing any work for defendant prior to his death.
20. Marion Griffin, M.D., serving as the local medical examiner, examined Sykes' body on October 18, 1998. According to the death certificate signed on October 28, 1998, Dr. Griffin concluded that the immediate cause of Sykes' death was carbon monoxide poisoning.
21. Sykes was an experienced mechanic. He was aware of the dangers of carbon monoxide poisoning, and that gasoline powered engines emitted carbon monoxide.
22. Sykes, in his capacity as service manager for defendant, was provided with a company truck. In accordance with defendant's company policies, Sykes was required to use the company vehicle whenever he conducted company business, and if the company vehicle was disabled or in need of repair, he was required to request a replacement vehicle from defendant. He was neither required to nor used a personal vehicle in the scope of his employment with defendant.
23. Prior to Sykes' purchase of his Jeep Cherokee, approximately one month before his death, he and Mrs. Merrill had owned one car, which was for Mrs. Merrill's use. Sykes never used his privately owned Jeep Cherokee for any official business for defendant.
24. During the three years prior to his death, Sykes never submitted to defendant any request for reimbursement for mileage or other use of any personal vehicle.
25. According to defendant's written company policies effective on October 17, 1998, working on a personal vehicle on company property was prohibited and a violation of this rule was grounds for immediate discharge.
26. Sykes was familiar with defendant's written company policies, including the prohibition against working on personal vehicles on company property, and knew or should have known that working on his personal vehicle in the Seagrove garage was prohibited and in violation of defendant's policies.
27. Neither Sykes, nor any other employees of defendant, had expressed or implied permission to work on personal vehicles on company property.
28. Neither Keller nor Sides ever observed Sykes, or any other employees, working on personal vehicles on company property during their announced or unannounced visits to the Seagrove garage.
29. At the time of his death on October 17, 1998, Sykes was performing a personal errand, and he was not doing anything that benefited defendant or furthered its business.
30. During the week of October 17, 1998 the company truck was operating properly and had not been in the shop anytime that week. In fact, the company truck had been operating properly and had not been in the shop for a long time prior to October 17, 1998.
 ***********
Based upon the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
Even though Sykes died on defendant's premises, the evidence presented, as to the time, place and circumstances of his death, does not support a showing that his death occurred in the course of his employment. At the time of Sykes' death he was not engaged in activities that were calculated to further, indirectly or directly, the defendant's business. He was engaged solely in a personal activity, the servicing of his personal vehicle, in direct contravention of a known company policy, which prohibits such activity on the defendant's premises. Therefore, Sykes did not sustain a compensable injury by accident arising out of and in the course of his employment on October 17, 1998. N.C. Gen. Stat. § 97-2(6) (10). Martin v. Bonclarken Assembly, 296 N.C. 540,251 S.E.2d 403 (1979). Harless v. Flynn, 1 N.C. App. 448, 162 S.E.2d 47
(1968).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Sykes' death did not result from a compensable injury by accident arising out of and in the course of his employment on October 17, 1998. Therefore, this claim for benefits under the Act must be and shall beDENIED.
2. Each side shall pay its own costs.
This the ___ day of December 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DCS/llc