* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence *Page 2 
in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between Plaintiff and Defendant-Employer.
3. Accident Fund Insurance Company was the carrier on the risk for Defendant-Employer.
4. Plaintiff's average weekly wage will be determined from an Industrial Commission Form 22 Wage Chart to be provided by Defendants with supporting wage information.
5. Plaintiff sustained an injury on or about October 19, 2004, with the exact date to be determined by the Industrial Commission.
 * * * * * * * * * * *
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Defendant Gurkin Construction Company is in the business of welding and fabricating steel for industrial construction, and maintains a place of business for such purpose on Fertilizer Road in Leland, North Carolina.
2. Plaintiff was hired as a painter by Gurkin Construction in January 1996. He was promoted to a tool attendant at some point, and on the date of the accident, October 19, 2004, was working as the tool room attendant at Gurkin Construction's place of business on Fertilizer Road.
3. Plaintiff's job duties as a tool attendant included issuing tools and consumables, receiving tools and consumables, delivering tools and consumables, and taking men to jobs. As a tool attendant at Gurkin Construction, Plaintiff was to work a 40-hour work week at $15.00 per hour, working Monday through Thursday from 6:45 a.m. until 5:45 p.m.
4. Approximately four years prior to the date of the accident at issue in this matter, Plaintiff also began doing additional work for Earl and Dixie Gurkin (hereinafter referred to as "the Gurkins"), usually on Fridays, Saturdays and Sundays, and occasionally during the week after his normal departure time from Gurkin Construction. If Plaintiff's work exceeded 40 hours, he was converted to a pay rate of $10.00 and would do work for the Gurkins on their personal property. Plaintiff also did personal work for the Gurkins while on Gurkin Construction's time clock. Plaintiff's additional work for the Gurkins included washing their cars, picking up furniture for them in Winston-Salem, plating grass on their land, feeding their goats, building a fence on their personal property, and building a shed for their goats. Plaintiff was essentially a "gopher" for Mr. Gurkin. Plaintiff did whatever personal work Mr. Gurkin asked him to do, and feared he would be terminated from Gurkin Construction if he did not do what Mr. Gurkin asked him to do. Plaintiff was often accompanied by other Gurkin Construction employees when *Page 4 
doing personal tasks for Mr. Gurkin, and those other employees were also on company time at company pay. Any wages paid after 40 hours at the $10.00 an hour rate would occasionally be paid "under the table" in cash; however, the majority of the time, Plaintiff was paid with a Gurkin Construction check.
5. Plaintiff was not required to clock out of work for Gurkin Construction when he was directed to complete tasks outside of what would be considered the normal purview of Gurkin Construction.
6. Mr. Gurkin testified that Gurkin Construction is an S-Corporation for tax purposes. Mr. Gurkin admittedly engaged in the practice of paying Plaintiff for personal work with Gurkin Construction funds. Mr. Gurkin testified that he would not repay Gurkin Construction from his personal funds to replace wages paid to Plaintiff for personal work done for the Gurkins.
7. The Full Commission finds that on October 19, 2004, plaintiff sustained an injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction. Although Defendants have attempted to characterize the injury as not occurring while in the course and scope of his employment with Gurkin Construction because plaintiff was performing personal work for the Gurkins; however, based on the totality of the evidence of record, the Full Commission finds that during the course of plaintiff's employment, his duties and responsibilities to Gurkin Construction and the Gurkins, respectively, blurred to the point that his employment duties for each were indistinguishable. Plaintiff was regularly directed by Mr. Gurkin, during normal working hours and while on Gurkin Construction pay, to perform a myriad of personal errands and projects for the Gurkins. Plaintiff was paid his $15.00 per hour rate of pay for the first 40 hours of his employment regardless of whether such employment *Page 5 
involved work at Gurkin Construction, or personal work for the Gurkins. Further, plaintiff was regularly paid by Mr. Gurkin with a Gurkin Construction check for work deemed to be personal. For these reasons, the Full Commission finds that on October 19, 2004, plaintiff sustained an injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction.
8. On October 19, 2004, Plaintiff left work at Gurkin Construction sometime between 1:30 and 3:00 p.m. to do personal work for the Gurkins per the direction of Mr. Gurkin, who instructed Plaintiff to accompany Mr. Hubert Campbell to plant grass in a five-acre field owned by the Gurkins. Plaintiff contends he left around 1:30 while Mr. Gurkin claims they left at 3 pm., although the time difference is not crucial to the issues.
9. Plaintiff rode with Hubert Campbell to the Gurkins' house where they picked up a truck and trailer owned by Gurkin Construction, which they used to transport the seed, fertilizer, and tractor to the Stella Road work site. They proceeded to the Gurkins' personal property at Stella Road where they worked spreading lime fertilizer and rye grass seed. Earl Gurkin came out to the work site and Plaintiff informed him that there was a problem with the brake on the tractor that he was using, which made it unsafe to load the tractor onto the trailer as it almost turned over during the offloading process.
10. The backhoe was loaded onto the trailer, but rather than risk having the tractor turn over in attempting to load it back onto the trailer, Mr. Gurkin instructed Plaintiff to drive it to the Gurkins' home approximately three miles away on Thomas Jefferson Highway. Once the tractor was taken to the Gurkins' home, Plaintiff would drive the Gurkin Construction truck back to the Gurkin Construction building to pick up his own personal vehicle to get home. The plan was to plant more grass that evening at the Gurkins' home. Mr. Gurkin originally followed the *Page 6 
Plaintiff driving the tractor in his truck. Mr. Gurkin then passed the tractor and went on ahead of the tractor.
11. Plaintiff turned the tractor onto the four-lane highway 74/76 in the direction of the Gurkin home. The speed limit for the highway is 55 miles an hour. The tractor was struck from behind by a car traveling on the highway. Plaintiff was thrown into the air and then to the ground from the force of the collision.
12. Plaintiff was airlifted from the accident scene to the hospital. He sustained injuries to his head, face, left arm, back, right leg, and pelvic area, as well as numerous internal injuries. Plaintiff was hospitalized for over 30 days, and underwent an open reduction internal fixation with debridement for a left wrist fracture.
13. As of the date of hearing before the Deputy Commissioner, Plaintiff continued to treat for his injuries with orthopedic surgeon Richard Bahner, M.D., orthopedic surgeon Mark Rodger, M.D., and neuropsychologist Christy Jones, Ph.D. Plaintiff has been given permanent physical restrictions and limitations with respect to his upper extremities that have prevented him from returning to suitable employment.
14. Dr. Bahner was of the opinion that Plaintiff had a permanent partial impairment, but had not given plaintiff a rating because the evaluation was not covered by Plaintiff's personal health insurance. Dr. Bahner further indicated in his note dated January 24, 2006, the date of his deposition in this matter, that Plaintiff would be limited in lifting no more than 10 pounds, no climbing or position where he would need to support his own weight involving his injured arm, and that he should not be involved with any work that would require power grip because he did not have strength or motion of the fingers in his left hand. *Page 7 
15. Dr. Rodger has projected a five percent (5%) permanent partial impairment to Plaintiff's left upper extremity; but found plaintiff was not yet at maximum medical improvement at the time of his deposition in this matter.
16. Dr. Jones, Plaintiff's neuropsychologist, was of the opinion that plaintiff has sustained psychological damage as a consequence of the injury by accident. Dr. Jones testified that Plaintiff was having difficulty coping with his disability, which has caused Plaintiff anxiety and depression. Further, Dr. Jones and was of the opinion that Plaintiff suffered from a moderate traumatic brain injury as a result of the accident.
17. The Full Commission finds that on October 19, 2004, plaintiff sustained an *Page 8 
injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction. Although Defendants have attempted to characterize the injury as not occurring while in the course and scope of his employment with Gurkin Construction because plaintiff was performing personal work for the Gurkins; however, based on the totality of the evidence of record, the Full Commission finds that during the course of plaintiff's employment, his duties and responsibilities to Gurkin Construction and the Gurkins, respectively, blurred to the point that his employment duties for each were indistinguishable. Plaintiff was regularly directed by Mr. Gurkin, during normal working hours and while on Gurkin Construction pay, to perform a myriad of personal errands and projects for the Gurkins. Plaintiff was paid his $15.00 per hour rate of pay for the first 40 hours of his employment regardless of whether such employment involved work at Gurkin Construction, or personal work for the Gurkins. Further, plaintiff was regularly paid by Mr. Gurkin with a Gurkin Construction check for work deemed to be personal. For these reasons, the Full Commission finds that on October 19, 2004, plaintiff sustained an injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction.
18. As a consequence of the injuries plaintiff sustained in the October 19, 2004, injury by accident, Plaintiff has permanent physical restrictions that have prevented him from returning to suitable employment. The Full Commission finds that Plaintiff has shown continuing disability through the production of medical evidence that he is physically incapable of returning to suitable employment.
19. As to the plaintiff's average weekly wage, the Full Commission finds that because a good portion of plaintiff's wages were admittedly paid "under the table," and regular time keeping methods were not kept by Defendant-Employer in regard to personal errands and work that Plaintiff performed for the Gurkins, the time records kept by Gurkin Construction do not fairly represent Plaintiff's average weekly wage. In considering the totality of the evidence regarding plaintiff's wages, including the fact that plaintiff was hired to work a 40-hour week for Gurkin Construction at the rate of $15.00 per hour, the Full Commission finds that an average weekly wage of $600.00 (or $15.00 per hour times 40 hours a week) most nearly approximates the amount which Plaintiff would be earning were it not for the injury. The Full Commission finds that this method of calculating Plaintiff's average weekly wage is most fair and just to both parties under the facts of this case. Thus, the Full Commission finds that Plaintiff's average weekly wage of $600.00 per week yields a weekly compensation rate of $400.00.
20. The Full Commission finds that there existed justiciable issues at the hearing before the Deputy Commissioner and, thus, this action was not defended without reasonable ground.
 * * * * * * * * * * * *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: CONCLUSIONS OF LAW
1. An accident arises out of and in the course of the employment when it occurs while the employee is engaged in some activity or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business. Perry v. AmericanBakeries Co., 262 N.C. 272(1964).
2. Where the employee works both for a company and the individual owner of the company, being on the company payroll and doing private work for the owner, the inquiry becomes whether the employee is performing duties for the benefit of the company. The test for relation of accident/injury to scope of employment duties is not controlled by the subjective belief of the worker, or by how he is paid, but rather the fundamental and determinative test is the nature and quality of the act being performed at the time of injury. See Burnett v. Palmer-LipePaint Co., 216 N.C. 204 (1939).
3. As used in the Act, the words "in the course of" refer to the time, place, and circumstances under which the injury occurs. Guest v. BrennerIron Metal Co., 241 N.C. 448 (1955). With respect to circumstances, injuries within the course of employment include those sustained while the employee is doing what a man so employed may reasonably do within a time which he is employed and at a place where he may reasonably be during that time to do that thing. Harless v. Flynn, 1 N.C. App. 448
(1968).
4. In applying these principles of law to the facts of this case, the Full Commission concludes that on October 19, 2004, plaintiff sustained an injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction. Although *Page 10 
Defendants have attempted to characterize the injury as not occurring while in the course and scope of his employment with Gurkin Construction because plaintiff was performing personal work for the Gurkins; however, based on the totality of the evidence of record, the Full Commission concludes that during the course of plaintiff's employment, his duties and responsibilities to Gurkin Construction and the Gurkins, respectively, blurred to the point that his employment duties for each were indistinguishable. Plaintiff was regularly directed by Mr. Gurkin, during normal working hours and while on Gurkin Construction pay, to perform a myriad of personal errands and projects for the Gurkins. Plaintiff was paid his $15.00 per hour rate of pay for the first 40 hours of his employment regardless of whether such employment involved work at Gurkin Construction, or personal work for the Gurkins. Further, plaintiff was regularly paid by Mr. Gurkin with a Gurkin Construction check for work deemed to be personal. For these reasons, the Full Commission concludes that on October 19, 2004, plaintiff sustained an injury by accident while in the course and scope of his employment for Defendant-Employer Gurkin Construction. N.C. Gen. Stat. § 97-2(6).
5. As a consequence of the injuries plaintiff sustained in the October 19, 2004, injury by accident, Plaintiff has permanent physical restrictions that have prevented him from returning to suitable employment. The Full Commission finds that Plaintiff has shown continuing disability through the production of medical evidence that he is physically incapable of returning to suitable employment. Russell v.Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As to the plaintiff's average weekly wage, the Full Commission concludes that because a good portion of plaintiff's wages were admittedly paid "under the table," and regular time keeping methods were not kept by Defendant-Employer in regard to personal errands and *Page 11 
work that Plaintiff performed for the Gurkins, the time records kept by Gurkin Construction do not fairly represent Plaintiff's average weekly wage. In considering the totality of the evidence regarding plaintiff's wages, including the fact that plaintiff was hired to work a 40-hour week for Gurkin Construction at the rate of $15.00 per hour, the Full Commission concludes that an average weekly wage of $600.00 (or $15.00 per hour times 40 hours a week) most nearly approximates the amount which Plaintiff would be earning were it not for the injury. The Full Commission concludes that this method of calculating Plaintiff's average weekly wage is most fair and just to both parties under the facts of this case. Thus, the Full Commission concludes that Plaintiff's average weekly wage of $600.00 per week yields a weekly compensation rate of $400.00. N.C. Gen. Stat. § 97-2(5).
7. Plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $400.00 from October 19, 2004, the date of the injury by accident, through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to receive medical treatment that is reasonably required to effect a cure, give relief or lessen the period of plaintiff disability, including necessary treatment with Drs. Bahner, Rodger, and Jones. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
9. The Full Commission concludes that there existed justiciable issues at the hearing before the Deputy Commissioner and, thus, this action was not defended without reasonable ground. For these reasons, the Full Commission declines Plaintiff's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 12 
 AWARD
1. Defendant Accident Fund Insurance Company shall pay to Plaintiff temporary total disability compensation at the weekly rate of $400.00 from October 19, 2004, through the present and continuing until further order of the Commission. The portion of such compensation that has accrued shall be paid to Plaintiff in a lump sum. This award is subject to the attorney's fee provided herein.
2. Defendant Accident Fund Insurance Company shall provide to Plaintiff medical treatment that is reasonably required to effect a cure, give relief or lessen the period of plaintiff disability, including necessary treatment with Drs. Bahner, Rodger, and Jones.
3. Defendant Accident Fund Insurance Company shall pay to Plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded herein. The portion of attorney's fees that is based upon compensation that has accrued shall be paid directly to Plaintiff's counsel in a lump sum; thereafter, Plaintiff's counsel shall directly receive every fourth check of compensation due Plaintiff.
4. Defendant Accident Fund Insurance Company shall pay the costs of this matter, including all expert witness fees if not paid by prior order.
This 13th day of November 2007.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ *Page 13 
 PAMELA T. YOUNG CHAIR
DISSENTING:
 S/________________ BUCK LATTIMORE COMMISSIONER *Page 14