* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission, and this is the Court of proper jurisdiction for this action.
2. All parties have been correctly designated, and there is no question as to the misjoinder or nonjoinder of parties.
3. On the date of injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all relevant times, an employment relationship existed between the parties.
5. Key Risk Management Services, Inc. was the third-party administering agent on the risk.
6. Plaintiff's average weekly wage is to be determined.
7. Plaintiff's alleged date of injury is October 23, 2002.
8. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 — Industrial Commission forms
 b. Stipulated Exhibit #2 — Plaintiff's medical records
 c. Stipulated Exhibit #4 — Leave records for plaintiff for 2000 — 2004
 d. Stipulated Exhibit #5 — Bonus leave records for plaintiff
 e. Stipulated Exhibit #6 — Processor 4 and 5 job descriptions
9. Other documents admitted into evidence include the following:
 a. Plaintiff's Exhibit #1 — Letter from David C. Roupe
 b. Plaintiff's Exhibit #2 — Letter from Edna Wilson
 c. Plaintiff's Exhibit #3 — Letter from Douglas Harrell
 d. Plaintiff's Exhibit #4 — Evaluation from Tony Bordeaux *Page 3 
 * * * * * * * * * * *
Based upon the most competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date, plaintiff was sixty years of age, and married with two adult children. Her educational background is significant for a bachelor's degree.
2. Before working for defendant-employer, plaintiff worked as a bank teller, a secretary, a billing clerk, and for her husband performing office administration work. She has no special skills or licenses other than on-the-job experience.
3. Plaintiff began working for defendant-employer in September of 2000. Her duties included work as a loan origination clerk at salary grade fifty-nine (59). As a loan origination clerk, plaintiff would collect information from borrowers for their student loan applications. Plaintiff received satisfactory evaluations and pay raises.
4. Plaintiff was later promoted to a Level 5 Service Repayment Clerk at salary grade sixty-one (61). Her duties involved collection of information for records and computer files as well as telephone work.
5. Plaintiff had been in an automobile accident on October 8, 2002. She sustained whiplash injuries to her neck in this accident and did not injure her knees. She received medical treatment and physical therapy for her neck injury.
6. On October 23, 2002, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with the defendant-employer when she was carrying some books for work when she slipped and fell on a concrete sidewalk at defendant-employer's *Page 4 
place of business. This was not a public sidewalk. Both the sidewalk and adjoining parking lot were reserved for employees and business invitees of defendant-employer.
7. When plaintiff fell, she struck her face, hands, arms, and knees on the concrete sidewalk. She sustained bruises and abrasions as a result of this fall.
8. Her injuries were witnessed by multiple employees. David Roupe helped plaintiff up and into the building. Other employees, including Edna Williams, who testified by deposition, witnessed plaintiff's condition shortly thereafter. Plaintiff's supervisor, Tony Bordeaux, was timely advised of her accident.
9. Edna Williams testified that she saw plaintiff on the same day she suffered her injury by accident. Although she did not see the fall, plaintiff told her she had fallen at work that day and showed her the bruises on her chin, knees, and face. Ms. Williams remembered that plaintiff limped as she walked. Ms. Williams prepared a statement in December 2003 describing her observations of plaintiff on the day of the fall.
10. Plaintiff completed a Form 19 on October 28, 2002, at the request of Pat Boswell, secretary to the director. The claim was never accepted by defendants, and plaintiff was never told which doctor to go to by defendants.
11. Prior to the date of her accident, plaintiff had been scheduled to attend physical therapy on October 23, 2002, to treat her whiplash injuries from her motor vehicle accident. Plaintiff attended this session of physical therapy on the same day as her injury. Plaintiff's physical therapist, Cathy Busby, noted plaintiff's multiple injuries, including her knee pain.
12. Plaintiff continued to work following her October 23, 2002, injury. Her abrasions improved; however, plaintiff's knee pain progressively worsened. *Page 5 
13. Prior to her injury, plaintiff was treating with Dr. Richard K. Torrey, her family physician. She treated with Dr. Torrey several times after October 23, 2002, both for her injuries sustained during the October 23, 2002, fall and for unrelated medical conditions.
14. In the summer of 2003, Dr. Torrey's assistant, Dr. Lee, referred plaintiff to Dr. Robert J. Caudle, an orthopaedic surgeon. He gave her a prescription medication and physical therapy. In August of 2003, plaintiff received a Cortisone shot by Dr. Torrey in her knee.
15. In the summer of 2003, plaintiff was told by Gail Davis in the director's office to go to a different doctor. She was given a list of acceptable doctors, and plaintiff chose Dr. Kevin P. Speer from the list.
16. Plaintiff's relationship with her employer began to worsen following her injury. First, there were disputes over plaintiff's parking location. In September of 2003, plaintiff received her first letter of reprimand. In October of 2003, plaintiff received a second letter of reprimand. In late October of 2003, plaintiff was demoted. In the meantime, plaintiff's claim was denied on a Form 61.
17. In late September of 2003, plaintiff began treating with Dr. Speer. An X-ray revealed abnormalities in plaintiff's left knee, including chondral damage and bone spurring. Dr. Speer ordered an MRI of plaintiff's knee.
18. Because of plaintiff's increasing knee pain, she was taken out of work on October 1, 2003. Initially, plaintiff was out of work without pay in October of 2003, and received twelve (12) weeks of FMLA, which ended in mid-December of 2003. Plaintiff did not return to work until January 21, 2004. Plaintiff missed four hundred and eight (408) hours as a result of her injuries from October 23, 2002, through March 1, 2004. *Page 6 
19. Dr. Speer saw plaintiff on December 18, 2003. The MRI of plaintiff's knee revealed that her patella had a severe full-thickness cartilage injury, and some evidence of scarring around the kneecap, which resulted in the kneecap being tilted. In addition, plaintiff had a cartilage injury in the medial tibiofemoral joint, as well as a meniscus tear, and a Baker's cyst, which is a collection of fluid in the back of the knee. Dr. Speer continued plaintiff on conservative treatment. He gave plaintiff work restrictions to rest her leg when necessary, to keep her leg elevated, and to ice the knee.
20. When plaintiff returned to work in late January of 2004, she was placed in a different section collecting accounts from delinquent borrowers. The desk that plaintiff was provided did not allow her to keep her leg elevated. She never returned to work without restrictions.
21. One day at the end of January of 2004, a snow day, plaintiff arrived at work at 10:00 a.m. Her manager arrived at 2:00 p.m. and told employees to leave at their own discretion. Plaintiff left at around 3:00 p.m. Other employees did not report for work at all. However, plaintiff was criticized for leaving work without permission.
22. On February 16, 2004, plaintiff began computer work and collection calls to delinquent borrowers. Plaintiff's manager would not let her take notes concerning the computer commands and information necessary, even though she received no formal training on the computer software. On March 1, 2004, plaintiff was fired for poor job performance and was written up by the manager, after only a few weeks on this assignment.
23. Plaintiff was out of work from March 1, 2004, until she returned to work with the State Controllers office in a temporary job on August 21, 2004. *Page 7 
24. During plaintiff's return to work attempt in the temporary job with the Controller's Office, she suffered problems with her knees and hands. She worked there at the same or greater wages through December 9, 2004, the day before she underwent surgery.
25. Plaintiff underwent surgery with Dr. Speer on December 10, 2004, and she has been out of work from that day through the date of hearing and continuing. During surgery, Dr. Speer noted and treated a myriad of problems with plaintiff's knee, including a full-thickness cartilage tear of her kneecap, a post-traumatic lesion, an erosive lesion of the femoral trochlea, tilting of the kneecap caused by scar tissue, and a meniscus tear.
26. Plaintiff would be working now if she were able. She has applied for multiple jobs without success. She continued to apply for jobs as of the date of the hearing.
27. Dr. Speer released plaintiff in April of 2005. He advised her that she may need a total knee replacement in the future.
28. As a result of her wrist injuries from her October 23, 2002 injury by accident, plaintiff underwent surgery by Dr. Joel D. Krakauer at Raleigh Orthopaedic Clinic. He released her in May of 2005. Plaintiff has suffered flare-ups in her hand symptoms with activities of daily living.
29. Mr. Steven Brooks, the Executive Director of the State Education Assistance Authority, testified by deposition about his knowledge of the plaintiff. Mr. Brooks acknowledged that there are at least two levels of managers between himself and the plaintiff and that much of his knowledge of the plaintiff is secondhand from sources that did not appear at the hearing. Mr. Brooks' testimony regarding plaintiff's job performance is given little weight as he was unaware of plaintiff's work restrictions, was not her direct supervisor, was unaware of her pre-injury satisfactory job performance evaluations and promotion, was unaware of her medical *Page 8 
condition, and had only limited direct knowledge of plaintiff's job performance during her unsuccessful return to work attempts with medical restrictions and while under medical care.
30. Dr. Torrey stated to a reasonable degree of medical certainty, that, more likely than not, plaintiff's knee symptoms were caused by the fall in her employment in October of 2002, and the Full Commission finds the same as fact. Dr. Torrey also stated and the Full Commission finds as fact that plaintiff's chronic pain from her knee has been a substantial contributing factor in her depression, although plaintiff had a pre-existing history of depression. Dr. Torrey recommended that plaintiff receive treatment from a mental health professional.
31. Dr. Speer stated to a reasonable degree of medical certainty, that, more likely than not, plaintiff's fall at work was a cause of, or substantial contributing factor in the development of her knee pain and pathology, and the Full Commission finds the same as fact.
32. Based on the greater weight of the most competent, credible evidence, plaintiff's knee condition was the result of her fall on October 23, 2002. The testimony of Dr. Torrey and Dr. Speer clearly relate plaintiff's knee condition to her fall. Plaintiff complained of knee pain on the day of her fall to her physical therapist and Edna Williams. There was no evidence plaintiff had ever suffered from knee pain or required medical attention for her knees prior to the admitted fall in the course of her employment with the defendant-employer on October 23, 2002.
33. Dr. Speer restricted plaintiff to sedentary work, predominantly involving sitting, which allows her to elevate her knee and change positions as necessary. Dr. Speer has also told plaintiff to avoid stooping, bending, squatting, climbing, and prolonged standing.
34. All of plaintiff's job duties before her injuries required good use of the hands, arms, and wrists, and the ability to walk to file rooms and retrieve files. Her job duties required her to bend and reach to get files. Since her injuries, plaintiff has not been able to perform her *Page 9 
pre-injury job duties. She suffers from flare-ups of her symptoms in both her knees and her wrists. Plaintiff has engaged in a reasonable job search following her loss of employment with defendant-employer and with the State Controllers's Office, but has been unable to find suitable employment within her restrictions.
35. Dr. Speer testified, and the undersigned finds, that plaintiff is permanently and totally disabled from her pre-injury employment. The only work within plaintiff's restrictions is modified sedentary work.
36. Plaintiff has received no vocational rehabilitation assistance from defendants.
37. Based upon the greater weight of the evidence, plaintiff has met her burden of proving that she is totally disabled. The only work within plaintiff's restrictions is modified sedentary work. Plaintiff has engaged in a reasonable job search, but has been unable to find employment. Thus, she is entitled to ongoing temporary total disability payments.
38. Plaintiff's treatment with Dr. Torrey, Dr. Caudle, and Dr. Speer was not paid for by workers' compensation. Plaintiff had to use sick and vacation time to attend her appointments with these physicians to treat her knee condition.
39. Gail Davis works in the human resource office at UNC — General Administration. She keeps a file on plaintiff and is the workers' compensation coordinator for five hundred (500) plus employees. Ms. Davis first received notice of plaintiff's injury in the summer of 2003. However, Ms. Davis was aware that plaintiff had submitted the Form 19 within three (3) days of her accident.
40. The undersigned finds that plaintiff gave reasonable notice of her injury by accident to defendant-employer by filling out the Form 19. Defendant-employer had actual *Page 10 
notice of plaintiff's accident, had ample opportunity to investigate the accident, and has not been prejudiced by any delay.
41. The medical treatment of Dr. Torrey, Dr. Caudle, and Dr. Speer has been reasonable and necessary to effect a cure or give relief of plaintiff's symptoms.
42. Plaintiff is at substantial risk of the need for future medical treatment for her compensable knee condition and is in need of ongoing medical care.
43. Defendants' defense of this case was based in unreasonable, unfounded litigiousness. When Ms. Davis received the written report of injury in July 2003 she contacted Key Risk and advised them she wanted to deny the claim. Ms Davis admitted she knew of no other injury to plaintiff's knee from anywhere else except the fall on October 23, 2002. Defendants had no legal or factual basis for the denial of this claim. Also, defendants have persisted in their denial of plaintiff's claim even after medical depositions made liability clear.
44. Plaintiff has reached maximum medical improvement.
45. Following her injury of October 23, 2002, plaintiff was never able to perform the full duties of her pre-injury employment as her symptoms increased over time and ultimately required medical care and attention in the summer of 2003. Plaintiff was disabled from pre-injury work at pre-injury wages from September 30, 2003, through the date of hearing and continuing and at the times of disciplinary action by defendant-employer.
46. Defendants failed to rebut plaintiff's evidence of disability with evidence of any suitable employment reasonably available to plaintiff and within her significant medical restrictions. The collections job plaintiff was transferred to in 2004 was not suitable employment, based on plaintiff's medical restrictions and based on the defendant-employer's lack of proper training for plaintiff in reference to this position. *Page 11 
47. Based on the Form 22 stipulated into evidence, on October 23, 2002, plaintiff had an average weekly wage of $457.41, yielding a compensation rate of $304.96 per week.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following additional
 CONCLUSIONS OF LAW
1. In a hearing before the Industrial Commission, the evidence which tends to support the plaintiff's claim should be considered in the light most favorable to her, and she is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Dogett v.South Atlantic Warehouse Co., 212 N.C. 599, 194 S.E. 111 (1937);Hildebrand v. McDowell Furniture Co., 212 N.C. 100, 193 S.E. 294 (1937). The Workers' Compensation Act is required to be construed liberally to effectuate its purpose to provide compensation for injured workers. Its benefits should not be denied by a technical, narrow, or strict construction. Stevenson v. City of Durham, 281 N.C. 300, 188 S.E.2d 281
(1972); Holloman v. City of Raleigh, 273 N.C. 240, 159 S.E.2d 864
(1968).
2. On or about October 23, 2002, plaintiff suffered a compensable injury by accident when she fell on defendant-employer's sidewalk in the course and scope of her employment. Hollar v. Montclair FurnitureCo., 48 N.C. App. 489, 490, 269 S.E.2d 667, 669 (1980). Injuries occurring on the employer's premises occur in the course and scope of employment. Harless v. Flynn, 1 N.C. App. 448, 459, 162 S.E.2d 47, 55
(1968)
3. Plaintiff's October 23, 2002, accident resulted in injuries to her hands, elbows, face, and knees and has been a substantial contributing factor in her current need for treatment *Page 12 
for depression. The plaintiff's knee condition and requirement for medical treatment and surgery were caused by her October 23, 2002, fall and is compensable. N.C. Gen. Stat. § 97-2(6).
4. As a result of plaintiff's injury by accident on October 23, 2002, she has been totally disabled from pre-injury employment at pre-injury wages during various periods of time when she used sick and annual leave and continuously from September 30, 2003, through the date of hearing and continuing. N.C. Gen. Stat. § 97-2(9). Plaintiff is permanently and totally disabled from pre-injury work as a medical fact and has engaged in a commendable, but unsuccessful search for suitable alternate employment. Russell v. Lowes Product Distrib., 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993). Plaintiff is entitled to payment for periods of disability resulting from her compensable injuries, subject to a credit for wages actually earned with defendant-employer. N.C. Gen. Stat. §§ 97-29, 97-42.
5. An attorney's fee in the amount of twenty-five percent (25%) of all of plaintiff's accrued and future compensation benefits is reasonable in this claim and is awarded to plaintiff's counsel as his fee. N.C. Gen. Stat. § 97-90.
6. The treatment of Dr. Torrey, Dr. Caudle, and Dr. Speer has been reasonable and necessary to treat plaintiff's compensable knee condition. Defendants shall pay for treatment previously rendered by these physicians. N.C. Gen. Stat. § 97-25.
7. Defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of her injury by accident to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25; Little v. Penn Ventilator Co.,317 N.C. 206, 345 S.E.2d 204 (1986). This includes treatment by Dr. Torrey, Dr. Caudle, and Dr. Speer and such future medical treatment as may be necessary for related depression. Dr. Torrey and Dr. Speer are designated as plaintiff's authorized treating physicians for direction and management of her *Page 13 
future medical care. N.C. Gen. Stat. §§ 97-25; 97-25.1. Plaintiff has established that she is at substantial risk of the need of future medical treatment for her left knee condition. Taylor v.Bridgestone/Firestone, Inc., 157 N.C. App. 453, 579 S.E.2d 413 (2003),dissent adopted per curiam, 357 N.C. 565, 598 S.E. 2d 379 (2003).
8. Plaintiff is entitled to reimbursement of any past expenses incurred as a result of the injury by accident, including travel expenses, pharmaceutical expenses, hospitalization, and medical treatment after submitting an itemized statement to defendants. N.C. Gen. Stat. § 97-25.
9. Plaintiff provided reasonable notice to defendants of her injury by accident. N.C. Gen. Stat. § 97-22.
10. The defense of this case was based on stubborn, unfounded litigiousness. Defendants did not conduct a reasonable investigation and denied plaintiff's claim without any medical evidence. Defendants continued to defend this case even after the medical evidence conclusively establishing causation became clear. N.C. Gen. Stat. §97-88.1.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff total disability compensation at the rate of $304.96 per week for all related sick and vacation leave used from October 24, 2002, through September 29, 2003, and continuously thereafter through the date of hearing before the Deputy Commissioner, and continuing until further Order of the Commission. Subject to any credit owed, all accrued benefits shall be forwarded directly to plaintiff in one lump sum. *Page 14 
2. Defendants shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of her compensable left knee condition and any other related conditions, and shall timely authorize and pay for such treatment, referrals, medication, and diagnostic studies as may be prescribed by plaintiff's treating physicians, Dr. Torrey and Dr. Speer.
3. Defendants shall reimburse plaintiff directly for all out-of-pocket expenses in connection with treatment by Dr. Torrey, Dr. Caudle, and Dr. Speer for her compensable injuries.
4. Defendants are entitled to a credit for amounts earned by plaintiff in unsuitable work activities performed after September 30, 2003.
5. As sanctions for defendants' unreasonable denial and defense of this claim, plaintiff's attorney's twenty-five percent (25%) attorney's fee shall be paid directly by defendants and shall not be deducted from the sums due plaintiff. Accordingly, defendants shall forward directly to plaintiff's counsel as his fee an amount equal to twenty-five percent (25%) of the accrued lump sum benefits owing to plaintiff pursuant to this AWARD. Additionally, the defendants shall forward an amount equal to every fourth compensation check directly to plaintiff's counsel of record.
6. Defendants shall bear the costs of this proceeding.
7. Defendants' Motion to Supplement the Record is Denied.
This the ___ day of October 2007.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1