***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated above.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. The carrier on the risk is correctly named above.
5. An employment relationship existed between Plaintiff and Defendant-Employer on July 22, 2009.
6. Plaintiff's average weekly wage in this claim is $693.70, which yields a compensation rate of $462.47.
 *********** EXHIBITS
The following documents were admitted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement;
 • Exhibit 2: Industrial Commission Forms;
 • Exhibit 3: Plaintiff's Medical Records;
 • Exhibit 4: Transcript of Plaintiff's Recorded Statement.
The following document was admitted into evidence as:
 • Plaintiff's Exhibit 1: Schematic Map of First Floor of Building.
 *********** ISSUES
1. Whether Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with Defendant-Employer on July 22, 2009? *Page 3 
2. If so, to what compensation, if any, is Plaintiff entitled?
3. Whether Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon a preponderance of the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 55 years of age, with a date of birth of April 12, 1956.
2. Defendant-Employer provides wireless and data services to its customers.
3. As of the date of the injury in this claim, Plaintiff had worked for about six years with Defendant-Employer as a customer care representative. She worked seated in a cubicle on the second floor answering the telephone and working with customers to resolve any problems they might be having with or related to Defendant-Employer's service.
4. Plaintiff worked in an office building located at 3601 Converse Drive in Wilmington, North Carolina. The building had a large sign on the outside of it that said "Verizon Wireless." Defendant-Employer had owned the building, but sold it at some date prior to the date of injury in this claim. After the sale, Defendant-Employer continued to be the main tenant in the building and maintained and controlled all activities occurring in the building.
5. There was a cafeteria on the first floor of the building that was operated by a contractor. Contractors also operated the mailroom and provided security, and cleaning services. Plaintiff's supervisor, Mr. Todd L. Swank, testified, and the Full Commission finds as fact, that all of the contractors serviced Verizon Wireless. The mailroom only processed mail for Verizon Wireless. The cafeteria did not provide services to anyone other than employees working in the Verizon building or their approved guests. Verizon employees were permitted to invite guests to *Page 4 
have lunch with them in the cafeteria, only if a supervisor approved the request and gave permission for the guest to be on the Verizon Wireless premises. The cleaning service and security service served Verizon.
6. There was a small satellite campus of Strayer University located in a portion of the first floor of the building, at which Defendant-Employer's employees exclusively, and not the public, could take classes.
7. Other than the four contractors and Strayer University, no businesses other than Defendant-Employer operated in the building.
8. Members of the general public were not allowed in the building. Only those with a security badge or who were on a guest list approved by Defendant-Employer could enter the building.
9. Defendant-Employer required its employees, including Plaintiff, to take a one-hour lunch break during each work-day. The employees clocked in and out on a phone system for the lunch break and were not paid for the lunch-break time. During the lunch break, the employees were free to go where they pleased, either inside or outside of the building.
10. Defendant-Employer expected its employees to adhere to the break schedule, including lunch breaks. In her performance reviews, Plaintiff was graded on her adherence to the break schedule.
11. On July 22, 2009, shortly after 2:00 p.m., Plaintiff was on her lunch break, on the first floor of the building, and had just finished walking several laps on a circuit on the first floor for exercise. She had just used the ladies' room on the first floor and was exiting from it when she stepped on some ice on the floor by an ice machine and fell to the floor, landing on her left knee. *Page 5 
The ice machine and the area in which Plaintiff fell were in a common area next to the elevator and were not located in the cafeteria.
12. At the time she fell, Plaintiff had about 15 minutes remaining on her lunch break and was headed to the elevator to go back up to the second floor and return to her cubicle. Plaintiff had planned to spend the remaining 15 minutes of her lunch break time reading a book for leisure at her desk.
13. Plaintiff immediately felt severe pain in her left knee upon landing on it when she fell on July 22, 2009.
14. Plaintiff had prior arthroscopic surgery to her left knee in July 2005, but she had not received any medical treatment for her left knee for about two years prior to July 22, 2009.
15. Plaintiff saw Dr. Messina, an orthopedic surgeon, on July 29, 2009. Dr. Messina diagnosed a contusion to Plaintiff's left knee and recommended physical therapy.
16. Dr. Messina did a series of three viscosupplementation injections on Plaintiff's left knee in November and December of 2009. He also prescribed medications.
17. Dr. Messina performed the previous arthroscopic surgery on Plaintiff's left knee in July 2005. Approximately two months after the July 2005 surgery, Plaintiff was back at her normal level of activity. After August 29, 2005, Dr. Messina did not see Plaintiff again until after her July 22, 2009 injury. Between 2005 and 2009, Plaintiff had intermittent, but not constant, left knee pain.
18. Plaintiff continued to have pain in her left knee as of the date of the hearing before the Deputy Commissioner. She characterized the pain as being a level four on a scale of one to 10. She has had no other acute injuries to her left knee since her July 22, 2009 injury. *Page 6 
Her left knee pain has waxed and waned somewhat since her injury, but has never gone away entirely.
19. Dr. Messina testified that Plaintiff had arthritis in her left knee following the 2005 surgery. Dr. Messina further testified, to a reasonable degree of medical certainty, that Plaintiff's July 22, 2009 fall materially aggravated Plaintiff's underlying left knee arthritic condition. Dr. Messina held this opinion regardless of whether Plaintiff had intermittent flare-ups in her left knee between 2005 and 2009.
20. Due to Plaintiff's left knee symptoms since her July 22, 2009 injury, Dr. Messina recommended that she consider a repeat arthroscopy for her left knee. He testified that this recommendation is related to the July 22, 2009 injury.
21. As of his deposition on September 28, 2010, Dr. Messina could not say that Plaintiff was at maximum medical improvement for her left knee condition.
22. As of the date of the hearing before the Deputy Commissioner, Plaintiff had missed eight days of work at various times for medical and physical therapy appointments as a result of the left knee injury she sustained on July 22, 2009. Plaintiff was continuing to work full-time, full-duty with Defendant-Employer.
23. The treatment that Dr. Messina has provided for Plaintiff's July 22, 2009 left knee injury has been reasonably required to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability. Further treatment for Plaintiff's left knee injury is reasonably required to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability.
24. The Full Commission finds based upon the greater weight of the evidence, that Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on July 22, 2009. *Page 7 
25. Defendants had reasonable and legitimate defenses to Plaintiff's claim and have not engaged in stubborn, unfounded litigiousness.
26. The appeal of this case to the Full Commission was brought by the insurer and the Full Commission by its decision herein is agreeing with the Opinion and Award of the Deputy Commissioner and ordering the insurer to make payment of indemnity and medical benefits to Plaintiff. The cost of this appeal to the Full Commission should be paid by Defendants, including attorney's fees.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown that she sustained a compensable injury by accident to her left knee arising out of and in the course of her employment with Defendant-Employer on July 22, 2009. N.C. Gen. Stat. § 97-2(6).
2. The term "arising out of" refers to the origin or cause of the accident. To be compensable, the accident must result from a risk or hazard incident to the employment, and the accident is not compensable if the employee would have been equally exposed to the hazard that caused the accident apart from her employment.Harless v. Flynn,1 N.C. App. 448, 455, 162 S.E.2d 47, 52 (1968).
3. Plaintiff's July 22, 2009 fall is reasonably considered to have been incidental to her employment with Defendant-Employer. Members of the general public were not equally exposed as Plaintiff to the hazard of slipping on ice from an ice machine, particularly since the public was not allowed to pass freely into the building and could only enter the building with *Page 8 
specific permission and for limited purposes. Plaintiff only had permission to be in the building through her employment with Defendant-Employer. Id.
4. The term "in the course of" refers to the time, place, and circumstances of the accident. Id. The time of the accident may include times during the work day, such as lunch breaks, that are built in for the employees' rest and refreshment. Here, Plaintiff had her accident while on a lunch break that Defendant-Employer required her to take as a condition of her employment. Id.
5. As to place, an accident may be compensable if it occurs on the premises of the employer or adjacent premises that are owned or controlled by the employer. Here, although Defendant-Employer no longer owned the entire building as of the date of injury, the preponderance of the evidence establishes that Defendant-Employer still essentially controlled the building, including the common area in which Plaintiff fell. Strickland v. King,293 N.C. 731, 239 S.E.2d 243 (1977); Bass v. MecklenburgCounty, 258 N.C. 226, 128 S.E.2d 570 (1962).
6. As to circumstances, the employee must be doing something at the time of the accident that she is authorized to do and that is calculated to further, directly or indirectly, the employer's business. An employee tending to her personal needs is indirectly benefiting the employer. Here, it was in Defendant-Employer's interest that Plaintiff be rested and refreshed so she could provide pleasant and effective customer service, and the activity in which Plaintiff was engaging when she fell thus indirectly benefited Defendant-Employer. Harless v. Flynn,1 N.C. App. 448, 162 S.E.2d 47 (1968).
7. Based upon a preponderance of the evidence, Plaintiff has shown that her ongoing left knee condition is causally related to her compensable July 22, 2009 injury. Click v. Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980). *Page 9 
8. As of the hearing, Plaintiff had missed eight days of work because of her compensable left knee injury and is thus entitled to one day of temporary total disability compensation. When and if Plaintiff misses more work because of her compensable left knee injury, she will be entitled to further temporary total disability compensation. N.C. Gen. Stat. §§ 97-28; 97-29.
9. Plaintiff is entitled to have Defendants pay for the medical treatment and testing she has heretofore received for her compensable left knee injury, including but not limited to that provided by Dr. Messina. N.C. Gen. Stat. §§ 97-2(19); 97-25.
10. Plaintiff is entitled to have Defendants authorize and pay for further medical treatment for her compensable left knee injury as recommended by Dr. Messina, including but not limited to surgery, physical therapy, injections, pain management, prescriptions, referrals and mileage. Id.
11. Defendants have not defended this claim without reasonable grounds, and Plaintiff is thus not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
12. Plaintiff's counsel is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88 as a part of the costs of defending Defendants' appeal to the Full Commission. According to Plaintiff's counsel's August 11, 2011 affidavit, Plaintiff's counsel as expended 30.5 hours at the rate of $200.00 per hour defending Defendant's appeal of this matter to the Full Commission. The Full Commission finds that a reasonable attorney's fee to be awarded to Plaintiff's counsel for the defense of this appeal is $6,100.00.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following: *Page 10 
 AWARD
1. Defendants shall pay to Plaintiff indemnity compensation as provided under the Act for all periods of disability resulting from her compensable injury. Currently, Defendants shall pay to Plaintiff one day of temporary total disability compensation at the rate of $462.47 per week.
2. Defendants shall pay for the medical treatment and testing that Plaintiff has heretofore received for her compensable left knee injury, including but not limited to that provided by Dr. Messina and for all reasonably related future medical treatment for Plaintiff's workplace injury. Defendants shall reimburse any third-party payors according to Industrial Commission procedures.
3. Dr. Messina is hereby designated as Plaintiff's treating physician, and Defendants shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that Dr. Messina recommends for Plaintiff's compensable left knee injury, including but not limited to surgery, physical therapy, injections, pain management, prescriptions, referrals and mileage.
4. Defendants shall pay to Plaintiff's counsel an attorney's fee of 25% of any indemnity compensation payable to Plaintiff.
5. Defendants shall pay to Plaintiff's counsel a reasonable attorney's fee of $6,100.00 pursuant to N.C. Gen. Stat. § 97-88.
6. Defendants shall pay the costs. As part of their costs, if they have not done so already, Defendants shall pay an expert witness fee to Dr. Messina.
This the 25th day of September, 2011. *Page 11 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1